J-S70001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: S.T.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER | |
| | No. 1682 EDA 2015 |

Appeal from the Decree May 7, 2015
in the Court of Common Pleas of Bucks County
Orphans' Court at No.: 2015-9016-36

| | |
|---|---|
| IN RE: A.M.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER | |
| | No. 1683 EDA 2015 |

Appeal from the Decree May 7, 2015
in the Court of Common Pleas of Bucks County
Orphans' Court at No.: 2015-9017-36

BEFORE: DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED DECEMBER 30, 2015**

In these consolidated appeals[1], M.S. (Father) appeals from the decrees

of the Court of Common Pleas of Bucks County (trial court), entered May 7,

_____

[*] Retired Senior Judge assigned to the Superior Court.

2015, that terminated his parental rights to his daughters, S.T.S., born in December of 2002, and A.M.S., born in January of 2000 (Children). Father's counsel has filed an application to withdraw as counsel. We grant counsel's petition to withdraw, and we affirm on the basis of the trial court's opinion.

Father was arrested on March 20, 2013, and charged with sexually assaulting A.M.S. Bucks County Children and Youth Social Services Agency (BCCY) took the Children into care that day pursuant to an emergency order. The Children have remained in the legal and physical custody of BCCY since that date. The trial court adjudicated the Children dependent on July 1, 2013.[2]

On October 24, 2013, Father pleaded no contest to charges of rape of a child, rape by forcible compulsion, involuntary deviate sexual intercourse, aggravated indecent assault of a child, indecent assault, endangering the welfare of children and corruption of minors. The criminal court sentenced Father to an aggregate term of not less than twenty nor more than forty years' incarceration in a state correctional institution. Father's sentence prohibits him from any contact with A.M.S. An order of the trial court also prohibits Father from any contact with S.T.S. Father has had no contact with the Children since March 20, 2013, the day of his arrest.

*(Footnote Continued)* ───────────────

[1] Father filed a motion to have these appeals consolidated on June 18, 2015. This Court granted Father's motion on July 13, 2015.

[2] The Children's mother is deceased.

Father did not attempt to revoke his plea, nor did he appeal his sentence. He did however, file for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. In his petition, which was still pending at the time of the hearing in this matter, Father claims ineffective assistance of plea counsel and prosecutorial misconduct.

In addition to the charges related to his daughter, charges of burglary and related offenses from 2011 are pending against Father in the Court of Common Pleas of Philadelphia County.

The Children have been living in the same foster home since they came into care, where they are doing "amazingly well." (N.T. Hearing, 5/07/15, at 8). Their foster parents, who wish to adopt the Children, continue to meet the Children's needs. (*See id.* at 9). The Children strongly wish to be adopted by their foster parents. (*See id.* at 10).

BCCY filed its petitions to terminate Father's parental rights on February 5, 2015. The trial court held hearings on those petitions on May 7, 2015, and at their conclusions, it entered its decrees terminating Father's parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Father filed his notices of appeal and statements of errors complained of on appeal on May 18, 2015. *See* Pa.R.A.P. 1925(a)(2). The trial court filed two identical opinions, one regarding S.T.S., and one supporting its decision as to A.M.S. *See* Pa.R.A.P. 1925(a).

On August 21, 2015, Father's attorney, Stuart Wilder, filed a petition to withdraw his representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and an ***Anders*** brief. In ***In re V.E.***, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the ***Anders*** principles to appeals involving the termination of parental rights. ***See In re V.E.***, ***supra*** at 1275. We stated that counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw representation and must submit an ***Anders*** brief. ***See id.***

Before reaching the merits of the issues raised in the ***Anders*** brief, we must address counsel's request to withdraw. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) (stating, "[w]hen faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw[]") (citation omitted).

To withdraw pursuant to ***Anders***, counsel must perform each of the following tasks:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004).  Thereafter, this Court examines the record and determines whether the appeal is wholly frivolous.  *See id.*

Our Supreme Court, in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), stated that an *Anders* brief must comply with the following factors:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 361.

With respect to the third requirement of *Anders*, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).  We may not address the merits of the appeal without first reviewing the petition to withdraw.  *See id*.

Herein, Attorney Wilder's petition to withdraw from representation states he has made a conscientious review of the record and has concluded that the appeal is wholly frivolous. (**See** Petition for Leave to Withdraw, 8/21/15, at unnumbered pages 1-2). In addition, on August 21, 2015, Attorney Wilder mailed Father (1) a copy of the petition to withdraw; (2) a copy of the **Anders** brief; and (3) a letter advising Father of his rights to proceed *pro se* or to retain private counsel if the petition is granted and to raise any additional issues that he deems worthy of consideration. (**See id.** at Exhibit A). On August 24, 2015, Attorney Wilder filed the **Anders** brief in this Court setting forth one issue that he believed might arguably support Father's appeal. Thus, counsel has satisfied the procedural requirements of **Anders**, and we must decide if counsel properly found that Appellant's claims are wholly frivolous. **See S.M.B.**, **supra** at 1237.

The **Anders** brief raises the following questions on appeal:

A. Should Appellant's counsel be permitted to withdraw his appearance because the appeal is wholly frivolous?

B. Were the Appellant's parental rights terminated prematurely before he had an opportunity to complete his post-conviction challenge to his criminal conviction?

(Father's Brief, at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there are no issues of arguable merit. The trial court opinion properly disposes of the issue presented regarding the termination of Father's

parental rights. (***See*** Trial Court Opinion, 6/30/15,[3] at 4-10) (finding that BCCY clearly and convincingly established the criteria of 23 Pa.C.S.A. § 2511(a) and (b) where it proved: (1) Father has been unable to provide essential care and subsistence needs for the Children for more than two years since his arrest, and will continue to be unable to do so for the indefinite future; (2) the Children have been in care for six months or more; (3) the Children have been in care for at least twelve months; (4) the reasons for placement continue to exist and cannot be remedied within a reasonable time; and (5) the termination of Father's parental rights is in the Children's best interest because of the court-imposed preclusion of Father's contact with them, their bond with their foster parents, and foster parents' desire to adopt them). Accordingly, we affirm the decrees of the Court of Common Pleas of Bucks County and grant counsel's petition to withdraw his representation.

Decrees affirmed. Counsel's petition to withdraw granted.

_____

[3] We note that because the trial court filed two identical opinions in this matter we only have attached the opinion that references S.T.S., but the court made the exact same findings in reference to both Children.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/2015

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:       S.T.S.                           :
                                              :        NO.: 2015-9016
        INVOLUNTARY TERMINATION               :
        OF PARENTAL RIGHTS OF M.T.S.          :

## OPINION

### I.      INTRODUCTION

M.T.S. (hereinafter referred to as "Appellant" or "Father") is the biological father of S.T.S., (hereinafter referred to as the "Child") who was born on January 21, 2000. Child was adjudicated dependent on July 1, 2013 and was placed in temporary legal and physical custody of the Bucks County Children and Youth Social Services Agency (hereinafter referred to as the "Agency"). She has been in foster care since March 20, 2013. At the conclusion of an evidentiary hearing on May 7, 2015, we granted the Agency's petition to terminate Father's parental rights as to Child.[1] Father has appealed that decision.[2]

### II.     BACKGROUND

On October 24, 2013, Father pled nolo contendere in the Court of Common Pleas of Bucks County to rape of a child, rape by forcible compulsion, involuntary deviate sexual intercourse, aggravated indecent assault of a child, corruption of minors, indecent assault and endangering the welfare of children. On March 12, 2014, Father was sentenced to

---

[1] At the conclusion of the May 7, 2015 evidentiary hearing, Father's parental rights were terminated as to two (2) children, S.T.S. as discussed herein, and A.M.S. (Bucks County Orphans' Court Docket 2015A9017), whom we discuss in a separate Opinion. We provide two separate Opinions to accommodate the two docket numbers that have been initiated in the Superior Court in regard to these appeals.

[2] We note that the biological mother of Child died on March 5, 2011. (N.T. 5/7/15, p. 17).

1

two (2) consecutive sentences of not less than ten (10) years nor more than twenty (20) years, yielding an aggregate sentence of not less than twenty (20) nor more than forty (40) years in a state correctional institution. (N.T. 5/7/15, p. 5).

The Agency petitioned to terminate Father's parental rights pursuant to the below-noted provisions of the Adoption Act, 23 Pa.C.S. §2511, which provide in pertinent part as follows:

(a)     General rule. – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

2

## III. APPELLANT'S STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Pursuant to Pa.R.A.P. 1925(a)(2), appellant filed a Notice of Appeal, accompanied by a Concise Statement of Errors Complained of on Appeal which we repeat *verbatim*, as follows:

1. The best interests of the children are not served by termination of parental rights while the Respondent is challenging his criminal conviction, as there is a chance he will be found innocent of the crimes he was charged with and thereafter be able to reunite with his children.

## IV. STANDARD OF REVIEW

When reviewing an appeal from a decree terminating parental rights, the appellate courts are limited to determining whether the decision of the trial court is supported by competent evidence. Our findings are entitled to reasonable deference. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, the appellate courts must accord the hearing judge's decision the same deference that they would give to a jury verdict. A broad, comprehensive review of the record is employed in order to determine whether the trial court's decision is supported by competent evidence. In re T.D., 949 A.2d 910 (Pa. Super 2008). "The trial court, as trier of fact, is the sole judge of credibility of witnesses." In re Adoption of A.C.H., 803 A.2d 224 (Pa.Super.2002).

As the party seeking termination, the Agency bore the burden of establishing by clear and convincing evidence that grounds existed for terminating Father's parental rights. The Superior Court has stated:

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to

3

come to a clear conviction, without hesitance, of the truth of the precise facts in issue... The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. ... Additionally, this Court need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights.

In re M.M., 106 A.3d 114, 117 (Pa. Super. 2014)(internal citations and quotations omitted)

## V.  DISCUSSION

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis, as follows:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re Adoption of C.D.R., 111 A.3d 1212, 1215 (Pa. Super. 2015) citing In re L.M., 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted).

There is a basic constitutional right to conceive and rear one's own child. However, upon the failure to fulfill parental duties, that right is converted to the child's "right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." In re. B.N.M., 856 A.2d 847, 856 (Pa. Super. 2004), appeal denied, 872 A.2d 1200 (Pa. 2005). As the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, it is well-established that a

4

court must examine the individual circumstances of each and every case and consider all explanations offered by the parent facing termination to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. In re R.I.S., 36 A.3d 567, 572 (Pa. 2011).

Once the statutory grounds for termination are established pursuant to §2511(a), the welfare of the child becomes the court's paramount consideration and §2511(b) comes into consideration. Courts must reflect on whether termination will serve the child's needs and welfare. In re Mastock, 611 A.2d 737 (Pa. 1992). 23 Pa. C.S. §2511(b) provides as follows:

> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

"It is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child – the love, comfort, security, and closeness entailed in a parent-child relationship, as well as the tangible dimension." In re C.S. 761 A.2d 1197, 1202 (Pa. Super. 2000). The court must examine the status of the bond between the natural parent and the child to determine whether terminating parental rights would destroy an existing, necessary, beneficial connection. Termination is warranted where family ties no longer exist, or hinder rather than benefit the child. In re Z.P., supra.. "Satisfaction of the requirements in only one of the subsections of Section 2511(a), along with consideration

of the provisions in Section 2511(b), is sufficient for termination." In re Z.S.W. 946 A. 2d 726, 729 (brackets omitted; emphasis in original).

The following pertinent facts were developed at the May 7, 2015 evidentiary hearing in this matter. Father pled nolo contendere in his criminal matter and was sentenced accordingly, as described above. Father's only issue complained of on appeal is that he is "challenging his criminal conviction" and were he to be found "innocent" upon consideration of his PCRA petition, then he should be able to reunite with his children. We infer from the appellate issue as articulated by Father's counsel that he suggests the Court should have deferred its decision to terminate his rights until his collateral challenge in his criminal case is fully addressed and resolved.

We heard testimony from Jodi Hertzberg, an Agency social worker. Ms. Hertzberg testified that A.M.S. is the victim of Father's crimes. Since the date of Father's arrest on March 20, 2013, he has had no contact with his two (2) daughters, presently ages fifteen (15) and twelve (12). Ms. Hertzberg's testimony confirmed that Father's contact with A.M.S. has been precluded by the Bucks County Criminal Court, and that the Bucks County Juvenile Court has precluded his contact with S.T.S.. (N.T. 5/7/15, p. 7).

We also heard Father's testimony that he has filed a PCRA petition asserting ineffective assistance of counsel in his criminal matter. Father testified that he was coerced by his trial counsel into the nolo contendere plea, and that his plea was not only involuntary, but unknowing. (N.T. 5/7/15, pp. 14-15, 21). Father maintains that none of the prosecution's underlying "story or theory" about the crimes makes sense. Father testified that the prosecutor submitted a false criminal record, using his name, although the record actually "belongs to his brother." (N.T. 5/7/15, pp. 21-22). Father also testified

6

that it was the failures of his trial counsel and the constitutional errors of the prosecutor which dictated that they proceed with the case against him or "they could have been facing charges themselves." (N.T. 5/7/15, p. 15). Based on these assertions of innocence and the suggestion that his PCRA petition might be granted, Father maintains that his parental rights should not have been terminated.

We disagree. "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs." In re Z.P. 994 A.2d 1108, 1119 (Pa. Super. 2010). "The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of C.D.R. 111 A.3d 1212 (Pa. Super. 2015), citing In re Adoption of R.J.S., 901 A.2d 502,513 (Pa. Super 2006).

The focus of a termination case is the actions and ability of the parent to care for his child. In considering the various sections of 2511(a) under which the Agency brought its petition to terminate Father's rights, we are cognizant of decisional law which holds that the cause of incarceration may be particularly relevant to the § 2511 (a) analysis, where imprisonment arises as a direct result of the parent's actions which were "part of the original reasons for the removal" of the child. This is the circumstance herein. In re Z.P. supra at 1120, citing In re C.L.G., 956 A.2d 999, 1006 (Pa. Super. 2008). Based upon the compelling evidence presented at the evidentiary hearing, including the background relevant to this specific case, where A.M.S. was the victim of sexual crimes perpetrated by Father, it is beyond doubt that Father has failed to perform parental duties as outlined in § 2511(a)(1).

7

Further, based on the evidence and testimony presented, and in conformity with the relevant statutory law, we found that Father has been unable to provide essential care and subsistence needs for Child for more than two (2) years since his arrest, and that he will continue to be unable to provide essential parenting for Child for the indefinite future. The requirements outlined in §2511(a)(2), then, have been met clearly and convincingly. "Incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence." The length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a) (2). In re Adoption of S.P., 47 A.3d 817, 830 (Pa. 2012). Here, Father's minimum release date is not until 2033, when his daughters will be thirty-three (33) and thirty (30) years of age.

As noted, given Father's lengthy incarceration, the Agency was also able to prove by clear and convincing evidence that Child has been in care for six (6) months or more, that the reasons for such placement continue to exist, and that those reasons cannot be remedied within a reasonable time, 23 P.S. §2511 (a)(5). Pursuant to §2511(a)(8), the Agency proved that Child has been in care for at least twelve (12) months (placement having begun on March 20, 2013), and that the conditions which led to placement continue to exist.

Decisional law, as noted above, mandates that the court not wait indefinitely, at the cost of a child's need for permanence and stability, for a parent's claims of progress and hope for the future to ripen. In re Adoption of C.D.R. supra. Here, it would be

8

unconscionable to allow Child's needs for permanence and stability to remain in limbo until some unknown date, when Father might be able to provide for her on the chance his PCRA petition is successful. In re M.M., 106 A.3d 114, supra.

As the Agency clearly and convincingly established the criteria for termination set forth in 23 Pa.C.S.§2511(a),(1),(2),(5), and (8),[3] we examined whether the termination of Father's parental rights served the best interests of Child, considering her developmental, physical, and emotional needs and welfare. Section §2511(b). We found that it did.

The Child has been placed with her current foster family, where she has resided with her biological sister, A.M.S., for more than two (2) years. The foster parents are a loving couple with grown children, two (2) older adopted children and many grandchildren. Child interacts and has bonded well with all of the family members, including the children and grandchildren, who are in and out of the home with frequency. The foster parents love Child and "treat her as their own." S.T.S. has some special needs in school and does have an IEP. Foster mother is a retired school teacher and has been strongly advocating for Child's needs. (N.T. 5/7/15, p. 9). Outside of school, Child is involved in youth group activities at church, as well as a choir and dance group, all of which she speaks about enthusiastically. She has attended summer camp through the church. The foster parents have expressed an interest in adopting Child, and Child has expressed a strong desire to be adopted by the foster family. (N.T. 5/7/15, pp. 8-10, 12-13). We found the evidence of Child's bond with the foster family to be more than clear and convincing.

A trial court, in considering what situation would best serve a child's needs and welfare, must examine the status of the natural parental bond and whether terminating

---

[3] We reiterate that the Superior Court need only agree with the trial court's decision as to any one subsection of §2511, in order to affirm the termination of parental rights. In re M.M., supra.

9

the natural parents' rights would destroy something in existence that is necessary and beneficial. Here we found termination was warranted, having heard no credible evidence of a positive relationship between Father and Child. Noting Father's criminal court-imposed absolute preclusion as to contact with Child, and given the foster parents' desire to adopt Child and Child's reciprocal desire, we found that the failure to terminate Father's rights would, in fact, hinder, rather than benefit Child. In re Z.P., supra.

## CONCLUSION

For all of the reasons noted above, we respectfully submit that our decision to grant the Agency's Petition to Involuntarily Terminate Father's parental rights as to Child should be affirmed.

BY THE COURT:

6/30/15
Date:

GARY B. GILMAN,                J.

N.B. It is your responsibility
to notify all interested parties
of the above action.

10